Filed 3/4/14  In re C.M. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| In re C.M., a Person Coming Under the Juvenile Court Law. | |
| SHASTA COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>T.W.,<br><br>        Defendant and Appellant. | C074412<br><br>(Super. Ct. No. 12JVSQ2920701) |

T.W., the mother of the minor C.M., appeals from the juvenile court's orders placing the minor with the father, R.M., and terminating the dependency.  (Welf. & Inst. Code, §§ 395, 300.)[1]  Mother contends the juvenile court erred in failing to protect the minor from the paternal grandfather.  We conclude the decision to terminate the

---

[1]    Undesignated statutory references are to the Welfare and Institutions Code.

dependency with placement with the father was within the juvenile court's discretion. Accordingly, we affirm the juvenile court's orders.

FACTUAL AND PROCEDURAL BACKGROUND

In January 2012, the seven-year-old minor was temporarily placed in a foster home after mother was arrested on Solano County warrants for making terrorist threats against father and his girlfriend. Mother was on probation in Shasta County at the time, and one of mother's conditions was not to contact father or his girlfriend. Father lived in Fairfield, and was a registered sex offender with convictions for sexual battery on a minor less than 18 years old and spousal battery. He had participated in a sex offender treatment program and completed 52 weeks of anger management classes.

The Shasta County Health and Human Services Agency (Agency) filed a dependency petition in February 2012, alleging jurisdiction over the minor based on mother's arrest, her inability to make appropriate plans for the minor's care after her incarceration, her failure to contact her probation officer, the officer smelling alcohol on her, the family's child welfare history, father's criminal history, and his status as a sex offender registrant. The juvenile court detained the minor later that month.

The February 2012 jurisdiction report stated mother was incarcerated at the Solano County jail awaiting criminal proceedings. The minor visited father and later reported to the foster parent that it was a good visit and he wanted to see his father again. The minor told the social worker he loved his father and felt safe with him but was worried about getting a stepmother. He previously visited father for 30 days, and "had a good time." If the minor could not be with mother, he would prefer to be with his father.

A social worker reported father's home was very clean with plenty of food in the refrigerator and no apparent safety issues. Based on the state of father's home, his positive relationship with the minor, and mother's continued incarceration in Solano County, the Agency recommended transferring the case to Solano County.

2

At the April 2012 jurisdiction hearing, the juvenile court sustained the petition, placed the minor in father's custody, and transferred the case to Solano County. The Solano County juvenile court accepted the transfer in May 2012. The August 2012 disposition hearing was resolved by agreement of the parties -- the minor was released to father's custody and mother was given reunification services. The dependency was transferred back to Shasta County in March 2013 after the minor went to live with mother in Shasta County.

In May 2013, the Agency filed a supplemental petition (§ 387) alleging the minor previously had been returned to mother because he missed her and she was doing well in her services. The petition further alleged mother was subsequently arrested for driving under the influence of alcohol, which required returning the minor to father's custody.

The minor was detained and placed with father in June 2013.

In a July 2013 report, the Agency recommended terminating the dependency with joint custody for the parents and sole physical custody to father. The report noted father lives in Oakley with the paternal grandfather and works full time in a local refinery. Mother was jailed in March 2013 for driving under the influence with an injury. She was released in April 2013 with pending criminal charges.

At the July 2013 combined jurisdiction and disposition hearing, mother's counsel informed the juvenile court mother "has kind of a split decision on the [Agency's] recommendation. She doesn't have any problems with dad. Her problem is, is that the father's either living with or near the paternal grandfather who cares for [the minor] apparently a high percentage of the time while dad is working, and mother represents to me that the grandfather has a drinking issue, and she understands there's been issues between [the minor] and his grandfather." Counsel also told the court mother felt the minor did better in school when he was in her custody, and she has the minor enrolled in a Redding school if the juvenile court "were to not follow the recommendation and that would be her preference, obviously."

The juvenile court recessed to allow the minor to talk to his counsel. When court reconvened, minor's counsel said the minor expressed concerns about the paternal grandfather's drinking. The minor told counsel, "There's always a beer in his hand, apparently, uhm, what concerns him most is that when he is at his grandfather's and he drives, it's with [the minor] and after consumption." This troubled the minor and he wanted the juvenile court to be aware of it.

Father's counsel said, "[F]ather's indicating that when the grandfather does consume alcohol, he does not drive, and he's willing to make it a condition that the grandfather not drive with the child in the vehicle if he has been consuming alcohol." The juvenile court told father he might not see everything the minor sees and asked father what his living arrangements were with the paternal grandfather. Father said the paternal grandfather was staying with the minor while father was at work. The paternal grandfather was recovering from cancer surgery and not working. Once the grandfather started working again, the minor would be placed in daycare. According to father, the paternal grandfather had a "few beers" during the day, but did not "drink like crazy or anything like that." The juvenile court asked if father asked the paternal grandfather not to drink when he took care of the minor. Father replied the paternal grandfather would agree to such a request.

The juvenile court asked the parties how they wished to proceed. Mother's counsel said, "Mother's request would be that the child be placed with her." Counsel informed the juvenile court mother was participating in mental health, drug, and alcohol services. Counsel for the minor submitted and father's counsel agreed with the Agency's recommendation.

The parents then waived the right to a jurisdictional hearing on the section 387 petition. The juvenile court sustained the supplemental petition, awarded joint legal custody to the parents, sole physical custody to father, and terminated the dependency.

4

DISCUSSION

Mother contends the juvenile court abused its discretion in failing to protect the minor from the paternal grandfather. We disagree.[2]

When the juvenile court terminates its jurisdiction over a dependent child, section 362.4 authorizes it to make custody and visitation orders that will be transferred to an existing family court file and remain in effect until modified or terminated by the superior court. (*In re Roger S.* (1992) 4 Cal.App.4th 25, 30.) Custody determinations are based upon the best interests of the child. (*In re Chantal S.* (1996) 13 Cal.4th 196, 206.)

We "review the juvenile court's decision to terminate dependency jurisdiction and to issue a custody (or 'exit') order pursuant to section 362.4 for abuse of discretion [citation] and may not disturb the order unless the court ' " 'exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination [citations].' " ' [Citations.]" (*Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300-301.)

Mother asserts the juvenile court should have kept the case open and ordered the Agency to investigate the allegations of alcohol abuse. She argues the juvenile court could have ordered that the minor not be left alone with the paternal grandfather, or that the paternal grandfather not drive with the minor while under the influence of alcohol, or not consume alcohol in the minor's presence.

Father told the juvenile court the paternal grandfather's drinking was not excessive, he would ask the paternal grandfather not to drink when caring for the minor, and the paternal grandfather would accede to this request. We defer to the juvenile

---

**2** We reject the Agency's contention that mother forfeited the contention by failing to request specific restrictions in the juvenile court's order or by submitting on jurisdiction. Mother raised the question of the paternal grandfather's drinking while the minor was in custody and proposed placing the minor with her rather than father.

court's implicit finding that father's statements and promises were credible. (*T.W. v. Superior Court* (2012) 203 Cal.App.4th 30, 47.)  It was not arbitrary, capricious, or patently absurd for the juvenile court to accept the nonoffending father's assurances that the paternal grandfather would not endanger the minor by drinking and driving or by drinking while caring for him.  Accordingly, there was no abuse of discretion in terminating the dependency with sole physical custody to father.

## DISPOSITION

The juvenile court's orders are affirmed.


       HOCH    , J.


We concur:


     RAYE   , P. J.


     BLEASE  , J.